UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| Duane Underwood,<br>    Plaintiff(s)<br><br>v.<br><br>Hawthorne Residential Partners, LLC,<br>    Defendant(s) | Case No: 2:26-cv-56 |

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff, Duane Underwood sues Defendant, Hawthorne Residential Partners, LLC, as follows:

PRELIMINARY STATEMENT

1. Defendant Hawthorne Residential Partners, LLC ("Hawthorne") provides property management services to apartment buildings throughout the southern United States. Plaintiff, Duane Underwood ("Underwood") was employed by Hawthorne as a Regional Service Manager from approximately November, 2021 through October 2, 2025.

1

2. Hawthorne misclassified Mr. Underwood as "exempt" for the purposes of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., (the "FLSA"). As a result of the misclassification, Mr. Underwood did not receive payment for overtime hours as required by the FLSA.

3. In addition, Mr. Underwood was fired on October 2, 2025 after he requested time off to deal with a serious medical issue. His termination was in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (the "FMLA"). Hawthorne purportedly fired him for neglecting to do an inspection following the collapse of a stairwell at a managed property. In reality, Hawthorne had repeatedly instructed Mr. Underwood to conduct other duties on the dates the inspections were scheduled, preventing him from completing the work. The reason given for his termination was merely a pretext.

PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Underwood is an individual residing in Lee County, Florida.

5. Defendant Hawthorne is a North Carolina limited liability company with its principal place of business in Guilford County, North Carolina.

6. Defendant Hawthorne manages apartment communities throughout the southern United States, including approximately more than a dozen communities in the State of Florida.

7. Defendant Hawthorne has several employees located in the State of Florida.

8. Defendant Hawthorne is registered with the Florida Secretary of State to do business in the State of Florida and maintains a registered agent for the purposes of service of process in the State of Florida.

9. Defendant Hawthorne's substantial and not isolated business activities in the State of Florida enumerated above are sufficient to subject Hawthorne to the general jurisdiction of this Court pursuant to Florida's long-arm statute, Fla. Stat. § 48.193.

10. In the alternative, the employment of Mr. Underwood, a Florida resident, and the conduct of Hawthorne with respect to Mr. Underwood described in this Complaint, are sufficient to subject

Hawthorne to personal jurisdiction of this Court for the purposes of this Complaint.

11. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it raises claims arising under federal law.

12. This Court is an appropriate venue for this dispute pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Hawthorne "resides" in the State of Florida for such purposes. Pursuant to 28 U.S.C. § 1391(c)(2), Defendant Hawthorne is deemed to reside in any judicial district in which it is subject to personal jurisdiction, including Florida.

13. Pursuant to 28 U.S.C. § 1391(4), venue is appropriate in the Middle District, in particular, because the overwhelming majority of Defendant's Florida business activities take place within the territory of the Middle District. On information and belief, Defendant manages about eleven apartment communities in the Middle District, from Fort Myers to Jacksonville, compared to only one in the Northern District and none in the Southern District.

14. Mr. Underwood was hired to work as a Regional Services Manager for Hawthorne in approximately November, 2021. He worked remotely from his home and very frequently traveled to Hawthorne-managed properties throughout the southern United States.

15. Mr. Underwood's primary duties were to:

   a. Provide technical support on maintenance matters to Hawthorne's on-site property management teams;

   b. Conduct training of new on-site maintenance personnel;

   c. Conduct maintenance inspections of existing properties in Hawthorne's management portfolio;

   d. Conduct inspections of the condition of new properties Hawthorne had agreed to begin managing or was considering agreeing to manage; and

   e. Provide direct maintenance relief on a temporary basis when on-site maintenance personnel were absent.

16. Mr. Underwood has retained the undersigned law firm and agreed to pay it a reasonable fee for its services.

## COUNT 1 – FLSA OVERTIME

17. This is a cause of action for unpaid overtime brought pursuant to the FLSA.

18. Plaintiff Underwood incorporates the allegations of paragraphs 1 through 16, above.

19. Defendant Hawthorne has employees who are engaged in interstate commerce or the production of goods for interstate commerce, or handling, selling or otherwise working in goods or materials that have been produced in interstate commerce, and has annual income in excess of $500,000.

20. Therefore, Hawthorne is a covered "enterprise" under the FLSA pursuant to 29 U.S.C. § 203(r).

21. Alternatively, even if Hawthorne is not subject to enterprise coverage under the FLSA, Mr. Underwood is subject to individual coverage under the FLSA because he regularly and customarily (and without limitation):

      a. Traveled across state lines in the performance of his duties for Hawthorne's customers in multiple states;

   b. Utilized the Interstate Highway System for the aforementioned travel across state lines;

   c. Utilized interstate air carriers for the aforementioned travel across state lines;

   d. Performed services for apartment communities owned by clients located in different state;

   e. Utilized interstate telephone and internet services to meet and communicate with co-workers in other states;

   f. Acquired goods and materials from one state for installation or use at properties managed by Hawthorne in another state.

22. In the three years preceding the filing of this Complaint (the "Applicable Time Period"), Mr. Underwood regularly worked in excess of 40 hours per week.

23. Mr. Underwood was regularly required to travel out-of-town for work purposes, which time should be considered compensable hours worked for the purposes of the FLSA.

24. Mr. Underwood was not paid at a rate of 1.5 times his regular rate for hours worked in excess of 40 per week.

25. Hawthorne did not properly track Mr. Underwood's hours worked.

26. Hawthorne's misclassification of Mr. Underwood, its failure to track his hours worked, and its failure to pay him overtime when he worked more than 40 hours in a work week, were willful.

27. Pursuant to the FLSA, in addition to his unpaid overtime, Mr. Underwood is entitled to recover liquidated damages and reasonable attorneys' fees and costs.

### COUNT 2 – FMLA INTERFERENCE

28. This is a cause of action for FMLA interference under 29 U.S.C. § 2615(a)(1).

29. Plaintiff Underwood incorporates the allegations of paragraphs 1 through 16, above.

30. Mr. Underwood was based in Florida, but he worked remotely from his home and was primarily engaged to travel to Hawthorne-managed properties throughout the southern United States.

31. Mr. Underwood was essentially employed through Hawthorne's main office in Greensboro, North Carolina, to which he reported (virtually) and from which he received his assignments.

32. During all relevant time period's Hawthorne employed 50 or more people within a 75-mile radius of its main office in Greensboro, North Carolina, including Mr. Underwood.

33. Mr. Underwood suffered a heart attack approximately 10 years ago, for which he is on medication, including an important medication that regulates his blood pressure.

34. In late summer and fall, 2025, Mr. Underwood was required to be out of town for multiple extended periods to perform services for Hawthorne in Savannah, Georgia.

35. As a result of his work travel, Mr. Underwood was unable to make his regular doctor's appointment to re-prescribe his blood pressure medication. He was off his medication for a period of about three months.

36. While in Savannah, in mid-September Mr. Underwood informed Hawthorne that he needed leave to get home urgently to deal with his own serious medical condition. He told Hawthorne he felt like he felt before he had his heart attack. He requested time off to return home to see his doctor so he could get his prescription.

37. At the time of his request, Mr. Underwood had worked for Hawthorne in excess of 12 months, had worked at least 1,250 hours in the preceding 12-month period, and had not exhausted his available FMLA leave. Therefore, he was potentially eligible for FMLA leave.

38. Upon learning of this potentially qualifying reason for leave under the FMLA, Hawthorne had a duty to determine whether Mr. Underwood was eligible, to provide notice to Mr. Underwood of his rights and Hawthorne's responsibilities, and to grant the requested leave.

39. After Mr. Underwood expressed the need for leave, Hawthorne did not make any effort to determine if Mr. Underwood was eligible for FMLA leave.

40. Hawthorne also failed to provide any notice to Mr. Underwood of his rights and its responsibilities under the FMLA or to provide him with any FMLA forms to request FMLA leave.

41. Hawthorne ultimately granted Mr. Underwood permission to return home.

42. However, on October 2, 2025, shortly after he returned to his assignment in Savannah, he was fired.

43. Hawthorne's failure to determine Mr. Underwood's eligibility, its failure to provide notice to Mr. Underwood, and its termination of Mr. Underwood, caused and had the effect of interfering with his rights under the FMLA.

44. Mr. Underwood has been damaged by Hawthorne's failures. His damages include lost wages and benefits following his termination.

45. In addition, Mr. Underwood is entitled to recover liquidated damages and reasonable attorneys' fees and costs pursuant to the FMLA.

### COUNT 3 – FMLA RETALIATION

46. This is a cause of action for FMLA retaliation (i.e., discrimination) under 29 U.S.C. § 2615(a)(2).

47. Plaintiff Underwood incorporates the allegations of paragraphs 1 through 16 and 30-42, above.

48. Hawthorne's termination of Mr. Underwood was in retaliation for his use of medical leave.

49. Mr. Underwood has been damaged by Hawthorne's failures. His damages include lost wages and benefits following his termination.

50. In addition, Mr. Underwood is entitled to recover liquidated damages and reasonable attorneys' fees and costs pursuant to the FMLA.

WHEREFORE, Plaintiff Underwood demands judgment against Defendant Hawthorne and respectfully requests:

    a. An award of unpaid overtime for the past three years pursuant to the FLSA for Count 1;

    b. An equal amount as liquidated damages under Count 1;

    c. Damages pursuant to the FMLA for Counts 2 and 3;

    d. Reinstatement or, in the alternative, front pay under Counts 2 and 3;

    e. Liquidated damages under Counts 2 and 3;

    f. Reasonable attorneys' fees and costs;

    g. Such other relief as the Court may deem just and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DESIGNATION OF LEAD COUNSEL

Pursuant to Local Rule 2.02(a), the undersigned is designated as "lead counsel" for the Plaintiff.

Respectfully submitted January 13, 2026.

                              <u>/s/ J. Kemp Brinson</u>
                              J. Kemp Brinson
                              Fla. Bar No. 752541
                              REED MAWHINNEY & LINK
                              53 Lake Morton Drive, Suite 100
                              Lakeland, FL 32801
                              Office: 863-687-1771
                              Mobile: 863-288-0234

Service emails:
Kemp@PolkLawyer.com
JKBService@PolkLawyer.com
Counsel for Plaintiff